USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/16/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

VADIM ZUBKOV,

                Defendant.

No. 14-cr-773 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    On April 21, 2020, Defendant Vadim Zubkov filed an emergency motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking compassionate release in light of the COVID-19 pandemic. Dkt. 455. In late March, Mr. Zubkov, who is currently housed at FCI Otisville, was diagnosed with COVID-19. By the time he filed the instant motion, Mr. Zubkov had already spent approximately two weeks in isolation and, "based on a lack of symptoms over a sustained period of time," been returned to general population. Dkt. 459 at 5 (Gov't Opp.). On May 2, the Bureau of Prisons ("BOP") determined that Mr. Zubkov had recovered from the virus. He nonetheless contends that he continues to experience COVID-19-related symptoms, for which he has received inadequate medical treatment. The Government opposes Mr. Zubkov's motion on the ground that he does not present an extraordinary and compelling reason for a sentence reduction.[1] Dkt. 459. For the following reasons, his motion is denied.

---

[1] The Government also initially opposed Mr. Zubkov's motion for failure to exhaust his administrative remedies.

**BACKGROUND**

On January 13, 2017, Mr. Zubkov, who is now 52-years-old, pled guilty to conspiracy to commit mail fraud, wire fraud, and health care fraud under 18 U.S.C. § 1349. He was sentenced to 60 months in prison on May 11, 2017, and began to serve that sentence on July 11, 2017. Dkt. 366. To date, Mr. Zubkov has been incarcerated for approximately 35 months and is expected to be released on October 12, 2021. Dkt. 455 at 1. He is currently incarcerated at FCI Otisville.

On April 21, Mr. Zubkov filed the instant motion seeking compassionate release because he "is in poor health and is in grave danger" since he "has been exposed and inflected [sic] by COVID-19." *Id.* at 1-3. He argued that he "cannot receive proper medical treatment at FCI Otisville because the detention facility is not equipped to handle the medical crisis caused by the COVID-19 pandemic and the medical staff of the facility is unwilling to attend him." *Id.* at 2; *see also id.* at 9 ("The outbreak of COVID-19 at FCI Otisville has overwhelmed th[e] staff and the inmates, like Mr. Zubkov, are not receiving the medical treatment required."). He further asserted that he "has not fully recovered from being infected with COVID-19" and "continuously coughs blood, his stools have blood and suffers from a respiratory condition that make[s] it difficult for him to breathe." *Id.* at 9.

On April 23, the Government opposed Mr. Zubkov's motion. In addition to contending that he failed to exhaust his administrative remedies, it argued that Mr. Zubkov's "case [of COVID-19] is mild and being adequately addressed by the [BOP]" and therefore he "has not met his burden to demonstrate that his condition constitutes an extraordinary and compelling reason warranting his release." Dkt. 459 at 1.

In support of its opposition, the Government provided a detailed account of Mr. Zubkov's medical condition and treatment since he first began to show signs of infection from COVID-19 in late March.[2]  On March 20, Mr. Zubkov first began to exhibit symptoms indicative of COVID-19 and "was placed in precautionary isolation."  *Id.* at 4. He was tested for the virus on March 23 and received a positive test result on March 27. Mr. Zubkov remained in isolation until April 2.  While in isolation, medical personnel visited him each day, with the exception of April 1.  During each visit, "personnel took his temperature and other vitals, and checked in with him on potential symptoms and his well-being."  *Id*.  Mr. Zubkov did not have a fever while in isolation.  However, on March 23, he complained of a headache and, on March 30, of blood in his stools. According to the Government, "[m]edical personnel regularly took notes reflecting that the defendant denied various symptoms and was observed to be ambulatory without difficulty."  *Id.* at 5.  Mr. Zubkov was removed from isolation on April 2 "based on a lack of symptoms over a sustained period of time."  *Id*.  Even after returning to general population, medical personnel visited him on April 6 and then every day between April 11 and April 21.  During each visit, he "was subject to a temperature check[] and otherwise screened for symptoms."  *Id.*  On April 13, he reported that he had coughed with blood a few days prior, but he no longer had the cough by the time of his report.  He never recorded a fever during this period.

In light of the Government's account of his medical condition and treatment, the Court provided Mr. Zubkov an opportunity to respond.  Dkt. 460.  On April 27, Mr.

---

[2] The Government offered to file under seal "approximately 300 pages of documents relating to Zubkov's medical care since he has been in custody at FCI-Otisville," but because Mr. Zubkov did not expressly dispute the Government's characterization of his condition or treatment, the Court did not direct the Government to file those documents.  Dkt. 459 at 4 n.3.

Zubkov filed his reply, in which he disputed the Government's description of his condition as "stable." Dkt. 461 at 6. In addition to questioning the medical staff's reliance on temperature taking, he argued that FCI Otisville's medical staff has "completely disregard[ed]" that he is "experiencing chest pain, coughing blood, and frequently finds blood in his stool" and have failed to "take[] affirmative actions to address [his] health conditions." *Id.* Mr. Zubkov further asserted that "other reasons in combination with his serious medical conditions . . . warrant a sentence reduction," such as that "FCI Otisville is not a hospital and lacks the medical staff, equipment, and medication necessary to address the medical needs of its inmates" and its "medical falls below medical standards." *Id*. at 5-6.

In response to the Court's request for an update on Mr. Zubkov's health and medical treatment, the Government advised the Court on May 6 that "BOP records reflect that, as of May 2, 2020, the defendant has recovered from COVID-19," which, it argued, "is consistent with records indicating that the defendant has continued to be in stable condition and has not had any fever, respiratory difficulties, or any severe symptoms of COVID-19 since April 21, 2020." Dkt. 464 at 1. It explained that medical staff had continued to perform "wellness checks" on Mr. Zubkov every day between April 21 and April 28, and then again on May 2. *Id.* at 1-2. According to the Government, Mr. Zubkov "did not voice any complaints at any of these wellness checks, and did not otherwise exhibit any other COVID-19 symptoms." *Id.* at 2. The BOP, therefore, recorded Mr. Zubkov as recovered from COVID-19 on May 2. One day later, Mr. Zubkov reported experiencing chest pains. Medical personnel evaluated him that day and found that his vitals were normal, his electrocardiogram ("EKG") test reflected no

4

changes, and he did "not . . . appear to be in distress." *Id*. Although a follow-up appointment was scheduled for the next day, May 4, Mr. Zubkov refused to attend, "indicat[ing] . . . that he no longer had chest pain, that the pain was entirely gone[.]" *Id*. He also did not show up to get his temperature checked that day.

In his May 6th letter, Mr. Zubkov alleged that the Government had failed to acknowledge "the deterioration of [his] health since contracting the deadly virus" and insisted that he remains "in grave danger." Dkt. 465 at 1, 3. Yet, he offered no details as to how his health had "deteriorate[ed]" since he had filed the instant motion or records to support that assertion. *Id.* at 1. Instead, in this letter, Mr. Zubkov now seemed to question whether FCI Otisville could provide adequate care for his preexisting heart condition.

On May 11, the Government informed the Court that the BOP had denied Mr. Zubkov's internal request. Dkt. 466. Although the Government contends that Mr. Zubkov did not fully appeal that decision, there is no dispute that the 30-day period from the time that Mr. Zubkov filed his internal application for compassionate release to the warden of FCI Otisville has run. *See* 18 U.S.C. § 3582(c)(1)(A); *see also* Dkt. 468 (explaining, in its letter dated May 11, 2020, that its "objection on procedural grounds" to Mr. Zubkov's motion "expires this Thursday, May 14, 2020"). Accordingly, the Court now turns to the merits of Mr. Zubkov's motion and concludes that he has failed to present an extraordinary and compelling reason warranting a sentence reduction.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may "reduce the term of imprisonment" where (1) "extraordinary and compelling reasons warrant such a

5

reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Tagliaferri*, No. 13-cr-115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) ("District courts have broad discretion to grant or deny a motion for a sentence reduction.").  The applicable policy statement provides that "extraordinary and compelling reasons exist" when, as relevant here, "[t]he defendant is suffering from a terminal illness" or is "suffering from a serious physical or medical condition," which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, App. n.1.

## DISCUSSION

Mr. Zubkov argues that he presents an extraordinary and compelling reason for a sentence reduction because he "has suffered from being exposed and infected by COVID-19 while incarcerated at FCI Otisville" and has not received proper medical treatment. Dkt. 455 at 9.  The Government acknowledges that Mr. Zubkov had a "mild case of COVID-19" but nonetheless insists that he has received – and continues to receive – "proper care [and] attention."  Dkt. 459 at 10.  The Government further asserts that because he is now "stable" and the BOP has "deemed [him] to have recovered" from the virus, he does not present an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A).  Dkt. 464 at 3.  The Court agrees.

Unlike the majority of motions filed in this district over the past two months seeking compassionate release under § 3582(c)(1)(A) based on COVID-19, this case is

6

not about the adequacy of preventive measures to ensure that a defendant does not contract the virus or the potential risk to him or her – particularly due to one or more underlying health conditions – if he or she were to do so.  Here, the parties agree that Mr. Zubkov was already diagnosed with COVID-19 in late March.  As such, the Court's analysis focuses instead on Mr. Zubkov's present need for medical treatment and the adequacy of the treatment that he is receiving.  *See United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (concluding that, because the defendant tested positive for COVID-19 after filing his compassionate release motion, the circumstances for resolving that motion had changed); *see also Camacho-Lopez v. Lowe*, No. 20-CV-563, 2020 WL 1689874, at *1 (M.D. Pa. Apr. 9, 2020) ("Most unfortunately, Camacho Lopez has contracted the COVID-19 virus, and he seeks immediate release based up on allegations of inadequate medical care.").

In light of his current condition and the medical treatment he has and continues to receive, Mr. Zubkov has not set forth an extraordinary or compelling reason for reducing his sentence pursuant to § 3582(c)(1)(A).  Given that the evidence presented establishes that Mr. Zubkov has "recovered," Dkt. 464 at 2 (Gov't May 6th Ltr.), he has not demonstrated that he currently has a serious medical condition, particularly one that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, App. n.1(A).  While Mr. Zubkov has experienced – and asserts that he continues to experience – COVID-19-related health problems, those problems do not appear to be "extremely serious" and, based on the Government's account of his recent medical checks, he seems to be in stable condition.  *United States v. Gileno*, No. 19-cr-161, 2020

WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("Courts grant sentence modifications or reductions based on defendants' medical conditions where those conditions are extremely serious, if not life-threatening."); *see also United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399, at *5 (S.D.N.Y. Jan. 8, 2020) ("The Medical Condition Note, which controls health-based compassionate release requests for younger defendants, highlights 'terminal illness' and 'serious conditions and impairments[.]'"). Moreover, based on representations to the Court, Mr. Zubkov appears to have received proper medical attention and care, which the Court expects FCI Otisville to continue to administer.

As soon as Mr. Zubkov began to show "possible symptoms of COVID-19" on March 20, FCI Otisville staff placed him into isolation. Dkt. 459 at 4 (Gov't Opp.). He was tested for the virus shortly thereafter and, after testing positive, was kept in isolation until April 2. "[T]he records reflect that [he] was attended to by medical personnel nearly every day" while in isolation, with the exception of April 1. *Id.* During these daily visits, "BOP medical personnel conducted regular wellness checks, and monitored [Mr. Zubkov] consistent with CDC guidelines, and were at the ready to transfer to him at a hospital for more intensive care if necessary." Dkt. 464 at 3. Based on the medical personnel's assessment, Mr. Zubkov had a "mild" case of the virus. Dkt. 459 at 10. He never had a fever. While he twice reported issues indicative of infection from COVID-19 – a headache on March 23 and blood in his stools on March 30, he did not report experiencing these issues again while in or out of isolation. "[B]ased on [his] lack of symptoms over a sustained period of time, and in line with the Center for Disease Control's (CDC) symptom-based guidance," the BOP determined that Mr. Zubkov could

8

return to general population on April 2.  *Id.* at 5.  As such, even though he tested positive for the virus and was in isolation, Mr. Zubkov reported only relatively mild effects from COVID-19 and appeared to be in stable condition while in isolation.

Even after being removed from isolation, Mr. Zubkov has continued to be monitored and treated by FCI Otisville's medical staff.  On April 6, each day between April 11 and April 28, and again on May 2, BOP medical personnel visited Mr. Zubkov.  Around this time, he twice reported issues potentially related to COVID-19, but each time was promptly seen by medical personnel.  On April 13, he told medical personnel that he had coughed up blood a few days prior.  However, by the time he made this report, Mr. Zubkov was no longer experiencing that cough.  On May 2, the BOP deemed Mr. Zubkov to have "recovered" from COVID-19.  Dkt. 464 at 2.  After Mr. Zubkov complained of chest pain on May 3, however, he was evaluated that same day, at which time medical personnel determined that his vitals were normal and an EKG test indicated no changes from his prior test.  Although a follow-up appointment was scheduled for the next day, Mr. Zubkov refused to go because he was no longer experiencing chest pain.  According to the Government's representations of the BOP records, Mr. Zubkov "did not voice any [other] complaints at any of these wellness checks, and did not otherwise exhibit any other COVID-19 symptoms."  *Id*.  Therefore, while there is no dispute that Mr. Zubkov experienced and reported issues related to his COVID-19 diagnosis since late March, medical supervision and treatment remained available to him throughout his time in and out of isolation.  And thankfully, Mr. Zubkov has been able to recover from the virus without requiring more intensive medical care.

The Court gave Mr. Zubkov the opportunity to "indicate whether he opposes the Government's representations regarding his health and medical treatment." Dkt. 460. Mr. Zubkov did not dispute the details provided in the Government's opposition. For instance, he does not address the Government's description of his treatment in isolation, including the representation that he received almost-daily visits from medical personnel, or that he only reported a headache and blood in his stools while denying other symptoms of the virus. Nonetheless, he insists that FCI Otisville's medical staff has "disregard[ed] the fact that [he] is a COVID-19 patient experiencing chest pain, coughing blood, and frequently finds blood in his stool" and have "not taken affirmative actions to address [these] conditions." Dkt. 461 at 6.

The Government's submissions, however, belie any suggestion that BOP medical personnel have disregarded Mr. Zubkov's recent health issues. On March 30, he complained of blood in his stool; on April 13, he complained of having coughed up blood a few days prior; and on May 3, he complained of chest pain. He reported each of these issues only once. Dkt. 464 at 2. After each report, Mr. Zubkov was evaluated by medical personnel, who determined that he was in stable condition. And medical personnel continued to evaluate him in the days after he initially reported these symptoms. Moreover, with regard to his reported chest pain, Mr. Zubkov himself refused to attend the follow-up appointment scheduled for May 4 after asserting that he no longer felt chest pain. Thus, contrary to Mr. Zubkov's assertion, FCI Otisville's medical staff appears aware of his health issues and has acted affirmatively to evaluate and treat his condition.[3]

---

[3] To the extent that Mr. Zubkov also intends to argue that his pre-existing medical issues, including sleep apnea and a heart condition, provide an independent basis to grant his compassionate release motion, that too is unavailing. Mr. Zubkov has not established that either condition "substantially diminish[es] [his] ability . . . to provide self-care" within the correction

10

Finally, to the extent that Mr. Zubkov argues more generally that FCI Otisville is unable to cope with the ongoing pandemic and all of its inmates' needs during this time, that is not a valid basis for granting his compassionate release motion. Mr. Zubkov, for instance, asserts that "FCI Otisville is not a hospital and lacks the medical staff, equipment, and medication necessary to address the medical needs of its inmates, especially Mr. Zubkov and others similarly situated." Dkt. 461 at 5-6. However, the Court's focus here – in light of the fact that Mr. Zubkov has already contracted and recovered from COVID-19 – shall be on his current health condition and medical care. Whether or not FCI Otisville lacks particular medical equipment or may struggle to provide for the needs of other inmates during this pandemic is not now relevant to whether Mr. Zubkov warrants compassionate release.[4] *See United States v. Weeks*, No. 16-cr-167 (LAP), 2020 WL 1862634, *2 (S.D.N.Y. Apr. 14, 2020) (rejecting a defendant's conclusory assertion "that the BOP and FCI Fairton are unprepared for an COVID-19 outbreak, that they are not taking seriously the pandemic").

---

facility. U.S.S.G. § 1B1.13, App. n.1. Furthermore, the Government explains that the BOP has been monitoring these conditions since Mr. Zubkov contracted COVID-19. *See* Dkt. 464 at 2 (explaining that his May 3rd EKG test "indicated no change since his previous test"). It also notes that Mr. Zubkov has received treatment for these conditions while incarcerated, including having been "frequently seen by BOP medical personnel over the past several years regarding his respiratory issues and sleep apnea issues, has been provided multiple computerized tomography (CT) scans, was prescribed a sleep study and provided with a CPAP machine by BOP, and even given at least one visit to an ear nose and throat specialist ('ENT') outside the facility." Dkt. 459 at 11 n.6. Because Mr. Zubkov has not demonstrated that his pre-existing medical conditions are on their own sufficiently serious and unable to be manage while incarcerated at FCI Otisville, they do not serve as a separate basis to reduce his sentence.

[4] As of May 7, the BOP reports ten active confirmed cases among staff at FCI Otisville, and no confirmed cases among inmates. *See* Federal Bureau of Prisons, COVID-19 Cases (May 7, 2020), *available at* https://www.bop.gov/coronavirus/; *see also* Dkt. 464 at 2 (explaining, in its May 6th letter, that the "BOP reports that . . . there are no known active cases of COVID-19 amongst inmates currently at FCI-Otisville").

Although the Court is not without sympathy for Mr. Zubkov, he "has not shown that his medical issues are sufficiently serious to modify his sentence to home confinement." *Gileno*, 2020 WL 1307108, at *4; *see also Russo*, 2020 WL 1862294, at *7 (denying without prejudice a compassionate release motion from a defendant who contracted COVID-19 unless, for instance, the defendant experiences "a deterioration of [his] condition" or there is "a change in the ability of the BOP to care for him"). Nonetheless, the Court trusts that the BOP will continue to monitor – and treat, as required – Mr. Zubkov's health conditions. *See* Dkt. 459 at 10 ("In the event his condition[] worsens, FCI-Otisville will adjust treatment, including taking him to a hospital, if appropriate under the circumstances."); *see also United States v. Matera*, No. 02-cr-743, 2020 WL 1700250, at *1 (S.D.N.Y. Apr. 8, 2020) (JMF).[5]

---

[5] Mr. Zubkov also raises an argument under the Eighth Amendment on the basis that "[t]he COVID-19 pandemic poses a serious threat to the health and welfare of inmates detained at FCI Otisville that suffer from underlying health conditions," and "FCI Otisville is neither capable of dealing with the COVID-19 crisis no provide[s] proper medical treatment to the inmates that have been exposed to the virus." Dkt. 455 at 12. This, he alleges, "constitutes a cruel and unusual punishment in violation of the Eighth Amendment." *Id.* at 13. In light of the fact that the record establishes that Mr. Zubkov is receiving adequate medical care, including evaluation on an almost-daily basis by medical personnel while in isolation and then also after returning to the general population, the Court cannot conclude that the BOP has failed here to "take reasonable measures to guarantee [his] safety." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

## CONCLUSION

For the foregoing reasons, Mr. Zubkov's motion for compassionate release is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 455.

SO ORDERED.

Dated:   May 16, 2020
         New York, New York

Ronnie Abrams
United States District Judge